E-FILED
Friday, 26 June, 2020  01:13:34 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

CLINTON MATTHEW CORBEIL,

    Petitioner,

    v.

F. ENTZEL, Warden,

    Respondent.

Case No. 19-cv-1373

## MEMORANDUM OPINION AND ORDER

Before the Court is Clinton Matthew Corbeil's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Pet'r's Pet. 2, ECF No. 1. For the reasons set forth below, Petitioner's § 2241 Petition is DISMISSED without prejudice. This matter is now terminated.

### Background

Petitioner is currently in the custody of the Federal Bureau of Prisons (BOP) and housed at a Federal Correctional Institute (FCI) in Pekin, Illinois ("FCI Pekin"), serving an aggregate sentence of 354 months in prison. Resp't Resp. 1, ECF No. 6. Petitioner's sentence consists of a 300-month sentence for Hobbs Act robbery committed in 1996 and a consecutive 54-month sentence for a subsequent aggravated assault of an inmate committed in 2007. *Id.*; App. to Resp't Resp. 2-3, ECF No. 6-1. Petitioner's projected release date is June 6, 2022. Resp't Resp. 1, ECF No. 6.

On August 31, 2018, Petitioner was assigned a job in the recreation department at FCI Pekin and scheduled to work Saturdays, Sundays, and holidays from 12:30 p.m. to 1:30 p.m. App. 5, 7, ECF No. 6-1. On April 14, 2019, Petitioner was cited for "unexcused absence from

work or any assignment" for failing to report for his shift. *Id.* at 6. According to Officer

Lockhart, who issued the incident report, Petitioner was not present when he conducted the

"weekend work call" in the recreation department. Resp't Mem. in Opp'n 1, ECF No. 9. Before

issuing the report on April 14, Lockhart confirmed that Petitioner was scheduled to work that day

from 12:30 p.m. to 1:30 p.m., but he was instead in his housing unit. App. 5, ECF No. 6-1.

On April 15, Lieutenant Hamm served Petitioner with a copy of the incident report.

Resp't Mem. in Opp'n 1-2, ECF. No. 9.  Upon service, Lieutenant Hamm read the report to

Petitioner and advised him of his rights for the disciplinary process. *Id.* at 2. At this time,

Petitioner stated he had not reported to his job "for a long time," and it was his understanding he

was not required to check in. *Id.*

Lieutenant Hamm referred the matter to the Unit Discipline Committee, which held a

hearing on April 18, 2019. *Id.* Petitioner presented his argument to the Committee, claiming he

was assigned to a paid job due to restitution obligations. App. 8, ECF No. 6-1. The first month,

he "waved in" at the recreation department gate without ever entering and was paid. *Id.* The

second month, he entered the department and performed duties, such as sweeping and mopping;

however, he was not paid for the second month because he was informed that the job was "no

show – no pay – never mind." *Id.* Subsequently, Petitioner did not check in for six months and

was not paid. *Id.* The Committee considered Petitioner's verbal and written statements along

with Officer Lockhart's statements. Resp't Mem. in Opp'n 2, ECF. No. 9. In giving greater

weight to the officer's statement, the Committee determined Petitioner committed the violation

and sanctioned him to a loss of job for 60 days. *Id.* at 2-3.

On April 26, 2019, Petitioner first appealed to the warden, F. Entzel ("Respondent"), and

asked him to expunge the incident report. Resp't Mem. in Opp'n 3, ECF. No. 9. The request was

denied. *Id.* On July 2, 2019, Petitioner appealed to the regional office, and the Regional Director

denied the appeal. *Id.* On August 12, 2019, Petitioner submitted his final appeal to the

Administrator of National Inmate Appeals, claiming that he was not notified of his work

schedule; that he should have been assigned a paying job due to restitution obligations; the

disciplinary proceedings were not administered in a fair, impartial, and consistent manner; and

the incident report should have been rewritten to include the name of the unit officer who located

him in his unit so he could have asserted a proper defense. App. 43-44, ECF No. 6-1. In denying

Petitioner's appeal, the Administrator concluded that the Committee's findings were reasonable

and fully supported by the evidence, and the sanction was commensurate with the violation and

in compliance with policy. *Id.* at 4.

**Procedural History**

On November 20, 2019, Petitioner filed a petition under 28 U.S.C. § 2241 to challenge

the temporary, 60-day loss of a prison job for violating prison rules or regulations and a loss of

40 days of earned programming credits on similar grounds he asserted during his final

administrative appeal. Pet'r's Pet. 1-2, 7-8, ECF No. 1.

On February 21, 2020, Respondent filed a response, arguing the Petition must be

dismissed for failure to state a claim. Resp't Resp. 2, ECF No. 6. Respondent asserted § 2241 is

limited to challenges contesting the facts or duration of an inmate's confinement, whereas the

Petition was only challenging the conditions of the confinement.

On March 4, 2020, Petitioner filed a traverse contesting that the incident report affected

the duration of his confinement. Pet'r's Traverse 1, ECF No. 7. Petitioner alleged the incident

report denied him access to evidence-based recidivism reduction programs that would have

3

reduced the duration of his confinement. *Id.* Petitioner further alleged that the incident report raised his recidivism score, lowering the number of programming credits he could earn. *Id.* at 4.

On March 23, 2020, Respondent filed a memorandum opposing the Petition arguing Petitioner failed to state a claim and exhaust his administrative remedies. Resp't Mem. in Opp'n 4, ECF No. 9. Respondent asserted that Petitioner failed to state a claim as there was no support to show he lost programming credits. *Id.* 5-6. Also, Respondent noted that Petitioner failed to submit his claims to the administrative process that he was denied access to the reduction programs and that the incident report increased his recidivism score. *Id.* at 7. Respondent notes that Petitioner was not denied access to the programs because he began working in a reduction program a month before the traverse was filed, and Petitioner's score was unaffected as he was already categorized as a "high" risk for recidivism based on the program's scoring system. *Id.* at 8-9. Alternatively, Respondent argues Petitioner's due process claim fails on the merits because Petitioner was afforded all due process to which he was entitled in the prison disciplinary context and his Petition does not meaningfully challenge the due process framework. *Id.* at 10.

On March 30, 2020, Petitioner filed a reply stating his claims should not be dismissed due to failure to exhaust administrative remedies because he could not appeal the denial to the program and his score because they arose recently and after the administrative appeals process. Pet'r's Reply 3-4, ECF No. 10. Petitioner noted he was denied access to a technician program because of the incident report, and he was actually a "medium" risk, but the incident report raised his score to "high." *Id.* at 2-3. Petitioner also asserts his claim succeeds on the merits because his due process rights were infringed when the identity of an officer involved in the incident report was not disclosed, thereby preventing Petitioner from obtaining and presenting testimony and evidence. *Id.* at 5.

**Legal Standard**

Federal prisoners who wish to challenge the execution of a sentence must do so under 28 U.S.C. § 2241; it is not for claiming an error in a conviction or sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). A petition under § 2241 challenges the facts or duration of confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973); *Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994). A motion seeking relief on the grounds of the execution, such as deprivation of good time credits or unconstitutionally denying an application for release, falls in the domain of § 2241. *Valona*, 138 F.3d at 693. Notably, this relief is only obtainable after a prisoner exhausts administrative remedies. *Carnine v. United States*, 974 F.2d 924, 927 (7th Cir. 1992). Exhaustion of administrative remedies requires complete exhaustion, even if the appeals process results in the denial of the requested relief. *Greene v. Meese*, 875 F.2d 639, 641 (7th Cir. 1989). Where a prisoner complains that errors have been made with respect to internal BOP policies and calculations, it is the BOP that must be given the first opportunity to correct any such errors. *Ramirez v. Zuercher*, No. 08-1283, 2008 WL 4724289, at *2 (C.D. Ill. Oct. 24, 2008).

Prisoners may not be deprived of good time credits or of credit-earning classes without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). The due process requirement is satisfied with: 1) issuing the charge with at least 24 hours advance written notice; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

**Analysis**

The questions before this Court are whether the Petitioner exhausted his administrative remedies before bringing this Petition, and, if so, whether the Petition alleges an unconstitutional deprivation of due process for a disciplinary action impacting the facts or duration of confinement.

Petitioner seeks to challenge the disciplinary proceedings in order to expunge the incident report which led to a disciplinary action allegedly resulting in a temporary loss of job and earned programming credits. Petitioner's argument is based on four grounds: (1) that his due process right was violated when he was not notified of his work schedule; (2) that he should have been assigned a paying job due to restitution obligations; (3) that the disciplinary proceedings were not administered in a fair, impartial, and consistent manner; (4) and that the incident report should have been rewritten to include the name of the unit officer who located him in his unit so he could have asserted a proper defense. Pet'r's Pet. 7-9, ECF No. 1.

Because there are two alleged deprivations, earned programming credits and loss of job, they are addressed separately. With respect to his loss of programming credits, the Court finds that Petitioner has not exhausted his administrative remedies. Regarding the temporary loss of his job, this Court finds that this claim is not proper under 28 U.S.C. § 2241, as it is a condition of the confinement and not an issue affecting the facts or duration of confinement. Accordingly, Petitioner's § 2241 Petition is DISMISSED without prejudice.

I.      **Failure to Exhaust Administrative Remedies**

The First Step Act (FSA) was enacted in December 2018, establishing a path for a system that assesses an inmate's likelihood of recidivism and allows participation in evidence-based recidivism reduction programs. *See* 18 U.S.C. § 3632 (2018); Pet'r's Traverse 2-3, ECF No. 7.

Participants could earn time credits and apply them toward reducing time under prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(C). The maximum amount of time credits an inmate can earn is determined by a recidivism score, which can be negatively impacted by rule violations committed during incarceration. *See* 18 U.S.C. § 3632(d)(4)(A); Pet'r's Traverse 2-3, ECF No. 7. The system was implemented into practice in July 2019. *See* 18 U.S.C. § 3632(a) (requiring development of the system no later than 210 days after the enactment).

Petitioner's claim for his alleged loss of programming credits is asserted for the first time in this Petition. *Compare* Pet'r's Pet. 1, ECF No. 1, *with id*. at 11, 13-14, 16-17. It is not clear how the Petitioner allegedly lost those credits. Petitioner may have been stripped of previously earned programming credits or perhaps his recidivism score limited the amount of programming credits he could earn. In the former situation, it is clear that the disciplinary sanction from the incident report was limited to the suspension of a job. In the latter situation, the FSA program where Petitioner could earn credits was implemented in July of 2019, which occurred in between Petitioner's second and third appeal. *See* 18 U.S.C. § 3632(a); Pet'r's Pet. 13, 16, ECF No. 1. Accordingly, Petitioner could not have sustained a loss of programming credits at the time of the initial disciplinary hearing when the program awarding those credits did not exist.

Petitioner also asserts for the first time in his traverse that, because of the disciplinary action, he was denied access to a reduction program and his recidivism score was elevated. *Compare* Pet'r's Pet. 1, ECF No. 1, *with id*. at 11, 13-14, 16-17, *and* Pet'r's Traverse 2-4, ECF No. 7. Petitioner asserts he is not able to appeal these decisions apparently because both occurred more recently and after the administrative process seeking expungement. Pet'r's Reply 3-4, ECF No. 10. On the contrary, the Petitioner was not barred from appealing those decisions through the administrative process and could have initially pursued that remedy. *See* 28 C.F.R. § 542.14.

7

Additionally, precedent provides that the inmate should still go through the process even if denial is a likely outcome. *See Greene*, 875 F.2d at 641 (acknowledging denial as a likely outcome but dismissing the argument as an insufficient reason to waive requiring exhaustion).

One mechanism to circumvent the administrative process is to show cause. *See Barksdale v. Lane*, 957 F.2d 379, 385 (7th Cir. 1992). This is measured by the "cause and prejudice test." *Id.* A habeas petition can proceed only if the inmate can show both cause for his procedural default and prejudice. *See Sanchez v. Miller*, 792 F.2d 694, 697-98 (7th Cir. 1986). To meet this test, there must be "some external objective factor, such as interference by officials or unavailability of the factual or legal basis for a claim, which impeded compliance with the [prison's] procedural rule." *See Barksdale*, 957 F.2d at 385. It does not seem that Petitioner meets this test. He asserted that he could not file issues related to the FSA because the BOP "dragged their feet" in implementation and he was recently provided with his recidivism score. Pet'r's Reply 3-4, ECF No. 10. Petitioner disclosed he received his score within the previous 60 days of filing his reply and was notified he was not selected for a particular program within the same general timeframe. *Id.* at 4, 12. It was at those times when Petitioner should have started the process for administrative review. There is no evidence in the record that explains why the Petitioner could not have done so. In fact, Petitioner admits he has received about 40 incident reports, which indicates he is all too familiar with the disciplinary process. *Id.* at 8-9. If anything, this demonstrates that Petitioner knows when and how to seek administrative relief.

The overall concern here is asserting new claims which have not been submitted for any administrative review. It is untimely to bring those now and avoid the administrative process. The proper route for challenging his recidivism score, denial of access to an evidence-based recidivism reduction program, and loss of credits must proceed first through the administrative

process allowing the BOP the opportunity to address and correct the record, if warranted. Because Petitioner has not exhausted his administrative remedies regarding this part of the claim, it must be dismissed.

**II.      Alleged Unconstitutional Disciplinary Action**

Petitioner also seeks to challenge the disciplinary proceeding to expunge the incident report on the basis that he was not afforded constitutional due process because he was denied the opportunity to present testimony and evidence at his hearing.

This component of the claim contains two considerations: (1) whether Petitioner had a liberty interest which due process constitutionally protected and (2) whether the merits of the Petition fall within the scope of 28 U.S.C. § 2241. In order for the Petitioner to maintain this challenge, he must have a liberty interest protected by due process. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (outlining due process analysis in two steps where the first step asks whether a liberty interest exists). This is true when the federal inmate is being deprived of good-time credits. *Ellison*, 820 F.3d at 274. A petition under § 2241 challenges the facts or duration of confinement. *See Preiser,* 411 U.S. at 499 (1973). This includes asserting the statute under which the inmate is convicted is unconstitutional, the inmate is unlawfully confined in the wrong institution, or parole has been unlawfully revoked. *Id.* at 486.

It has been recognized that a disciplinary sanction for a loss of job is a condition of the confinement. *DeWalt v. Carter*, 224 F3d 607, 617 (7th Cir. 2000). Petitioner worked in the recreation department where he handled duties such as mopping. His disciplinary sanction for an unexcused absence was a temporary loss of job for 60 days. It follows that this sanction did not affect the facts or duration of confinement. It then follows that this is not a protected liberty interest that would be afforded the same constitutional due process as if Petitioner was stripped

for good-time credits. Because it is a condition of confinement, this Court finds that he is precluded from bringing this challenge through a habeas petition and may instead pursue his claim by filing a civil action.

Petitioner also argues he was not given the name of the unit officer who located him in his housing unit when he should have been at his job. He asserts this violated his due process right because he was not able to present evidence and testimony contesting the disciplinary charges. Pet'r's Pet. 6-8, ECF No. 1; Pet'r's Reply 5, ECF No. 10.  This is countered by the consideration that there "must be a mutual accommodation between institutional needs and objectives" and the rights owed to an inmate. *See Wolff*, 418 U.S. at 556. Prison disciplinary proceedings are different from a criminal prosecution and "the full panoply of rights… in such proceedings does not apply." *Id.* Unit officers and inmates are in constant contact with each other, and there can be frequent tension, frustration, and resentment. *Id.* at 562. Where the inmate is denied the identity of the unit officer as a source of challenging evidence in a disciplinary proceeding for a sanction impacting a condition of the confinement, it is weighed against the interests of the institution to avoid the danger of tension and disruption. *See id.* at 566-69 (illustrating how confrontation presents a great hazard to the institutional interests). Consequently, this interest outweighs the contention on which the Petitioner relies to unearth the identity of the unit officer. Denying the identity was inconsequential because Petitioner has provided contradictory evidence as to his whereabouts on the date of the incident.  *See* App. 34, ECF No. 6-1. *Compare id.* at 7 (Petitioner's comments to the investigator that he spoke with the unit officer in his unit on the day of the incident), *with id.* at 35 (Petitioner appealing at the regional level claiming he was at the recreation department for his shift).

Petitioner states that the incident report affected the duration of his confinement because it limited the number of days he may earn under the FSA program and denied him access to a program where he could have earned credits to shorten his confinement. Pet'r's Traverse 3-4, ECF No. 7. This Court notes the evidence the Petitioner provided shows that he was not selected for the FSA program, which is not necessarily equivalent to denial of entry. *See* Pet'r's Reply 12, ECF No. 10. As mentioned in the previous section, Petitioner has not exhausted his administrative remedies for this assertion and the Court declines to entertain his claim until he has done so.

## Conclusion

For the reasons set forth above, Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 is DISMISSED without prejudice. This case is now terminated. The Clerk is directed to close this case.

ENTERED this __26th__ day of June, 2020.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

11